UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JEFFREY BURGESS
        Petitioner,


        v.                                    CIVIL ACTION NO.
                                              09-40045-MBB

CAROLYN A. SABOL,
Warden,
        Respondent.


**MEMORANDUM AND ORDER RE:
RESPONDENT'S MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY # 8)**

**October 18, 2010**


**BOWLER, U.S.M.J.**

        Pending before this court is a motion for summary judgment

filed by respondent Carolyn A. Sabol ("respondent"), Warden at

the Federal Medical Center in Devens, Massachusetts ("FMC

Devens").  (Docket Entry # 8).  Respondent seeks a dismissal of

the above styled petition filed by petitioner Jeffrey Burgess

("petitioner"), an inmate at FMC Devens, under 28 U.S.C. § 2241

("section 2241").

        Petitioner challenges the calculation of his federal

sentences on the basis that:  (1) the Federal Bureau of Prisons

("BOP") incorrectly calculated and failed to credit the amount of

good time (Docket Entry # 1, p. 2); and (2) the sentence for aiding and abetting the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) ("section 841") is subject to parole and a mandatory release after serving two thirds of the sentence, i.e., 30 years, as required under 18 U.S.C. § 4206(d) (repealed), 18 U.S.C. § 4164 (repealed) and 18 U.S.C. § 4205(g) (repealed). Petitioner also submits that the BOP failed to conduct a hearing as required under 28 C.F.R. § 2.53.  (Docket Entry ## 1, 13 & 16).[1]

    In opposing summary judgment, petitioner adds an argument that he "should have been sentenced pursuant to the United States Sentencing Guidelines in effect on the date of his [January 1992] sentencing."  (Docket Entry # 16).  It is undisputed that petitioner committed the offenses that led to the charges and conviction in September 1987.  The Sentencing Act of 1987, Pub.L. No. 100-182, expressly provides that the new sentencing guidelines "apply 'only to offenses committed after the taking effect of this chapter,'" i.e., November 1, 1987.  <u>United States v. Twomey</u>, 845 F.2d 1132, 1135 (1st Cir. 1988); <u>see United States</u>

---

    [1]  Petitioner elaborates on the above grounds in additional filings (Docket Entry ## 13, 16 & 18) which, due to his pro se status, this court considers as part of the petition.

<u>v. Eliason</u>, 3 F.3d 1149, 1155 (7th Cir. 1993) ("[b]ecause the
crime for which the defendant was convicted was committed before
November 1, 1987, the United States Sentencing Guidelines are not
applicable").  The provisions of the Anti-Drug Abuse Act of 1986,
Pub.L. No. 98-473 ("ADAA"), effective from October 27, 1986 to
November 1, 1987, as well as certain provisions of the
Comprehensive Crime Control Act of 1984, Pub.L. No. 98-473,
therefore govern the sentences.[2]


BACKGROUND

On September 25, 1987, petitioner was arrested on a three

---

[2]  The First Circuit's <u>Padilla</u> decision sets out the
statutory framework at the time.

In 1984, Congress passed the Crime Control Act, Pub.L. No.
98-473, §§ 500-522.  In 1986, Congress passed the Anti-Drug
Abuse Act of 1986, Pub.L. No. 99-570, 100 Stat. 3207
(hereinafter the "ADAA").  In 1988, Congress then passed the
Anti-Drug Abuse Act of 1988, Pub.L. No. 100-690.  Each of
these laws amended the earlier version.  As a result, there
was considerable confusion regarding which version would be
in force at which time.  The problem was most acute for the
period running from October 27, 1986, the date of passage of
the ADAA, until November 1, 1987, the specified effective
date of many of the 1984 and 1986 amendments, including the
Sentencing Guidelines.

<u>Padilla Palacios v. U.S.</u>, 932 F.2d 31, 32-33 (1st Cir. 1991).
The effective dates of the provisions governing the calculation
of petitioner's sentences under the Comprehensive Crime Control
Act of 1984 and the ADAA are explained infra.

count Indictment charging him with:  (1) conspiracy to possess with intent to distribute and distribution of cocaine in violation of 21 U.S.C. § 46 (Count One); (2) aiding and abetting the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Two); and (3) unlawful use of a communication facility in violation of 21 U.S.C. § 843(b) (Count Three).  Petitioner committed the foregoing offenses in September 1987.  Convicted of all three offenses, the United States District Court for the Eastern District of Michigan sentenced petitioner on January 2, 1992, to a 45 year term of imprisonment on the conspiracy count, a 45 year term on the aiding and abetting count and a four year term on the unlawful use count. The court ordered the sentences to run concurrently.

The parties agree that the sentences on the conspiracy and the unlawful use charges were subject to parole.  The parties dispute the applicability of parole to Count Two.

The presentence report reflects that Count Two involved the distribution of more than five kilograms of cocaine.  (Docket Entry # 9, Ex. 1, ¶ 6).  Because the count involved this amount, a BOP program statement notes that the violation was *not* subject to parole.  (Docket Entry # 9, Ex. 1(C); BOP program statement 5880.30 (1993), App. I, p. 1).  The same program statement

4

elsewhere provides that a "non-parolable sentence followed by a concurrent 4205(a) sentence of equal length imposed on the same date" is likewise "[n]ot [e]ligible for parole."  (Docket Entry # 9, Ex. 1(D); BOP program statement 5880.30 (1993), App. III, p. 11).

In error, the BOP prepared a sentence computation that allowed parole.  It set a 45 year aggregate term of confinement beginning January 2, 1992, with 1,560 days of credit for time spent in custody from September 25, 1987 to January 1, 1992, and a parole eligibility date of September 24, 1997.  (Docket Entry # 9, Ex. 1(E)).  The United States Parole Commission ("the parole board") ordered petitioner's release on parole effective September 24, 1997, until September 24, 2032.  (Docket Entry # 15, Ex. 3 & 4).

On May 11, 2001, federal authorities arrested petitioner for violating the terms of his parole.  (Docket Entry # 9, Ex. 1, ¶ 10).  In a notice of action dated December 20, 2001, the parole board revoked petitioner's parole.  (Docket Entry # 15, Ex. 5). The notice set a new parole date of January 11, 2002.  (Docket Entry # 15, Ex. 5).  The parole board thereafter retarded the January date by 31 days for an effective parole date of February 11, 2002.  (Docket Entry # 15, Ex. 6).

On or about January 30, 2002, staff at the federal facility housing petitioner at the time audited the computation of petitioner's sentences.  The audit uncovered the mistake regarding the sentence on Count Two as being subject to parole. (Docket Entry # 15, Ex. 7).  A January 30, 2002 email explains that:

> upon auditing [petitioner's] sentence computation, a concern with his sentence procedure was questioned regarding previous parole and the underlying fact that the inmate committed an offense during the period of the Anti Drug Abuse Act, which was overlooked during the original calculation . . . The Central Office ISM staff agreed that the inmate's sentence was originally calculated incorrectly, reflecting the sentence as parolable.

(Docket Entry # 15, Ex. 7).

On February 6, 2002, the BOP recalculated the sentences. The recalculation reflected a 45 year term on Count Two beginning January 2, 1992, with 1,560 days of credit for the time spent in custody from September 25, 1987 to January 1, 1992, and no eligibility for parole.  (Docket Entry # 9, Ex. 1(L) & Ex. 1, ¶ 14).  Because petitioner's 1997 release resulted from the BOP's error, the BOP considered petitioner's time spent on parole as time spent serving the 45 year term.  (Docket Entry # 9, Ex. 1, ¶ 14).  A February 5, 2002 notice of action reopened petitioner's parole and set a nunc pro tunc parole date of January 11, 2002,

for the parolable 45 year sentence on Count One subject to the concurrent 45 year non-parolable sentence on Count Two.  (Docket Entry # 9, Ex. M).  Petitioner remained in custody to serve the non-parolable 45 year sentence on Count Two.  (Docket Entry # 9, Ex. 1, ¶ 16 & Ex. 1(N)).

Where, as here, the BOP paroles an inmate from a parolable term to a non-parolable term, the BOP "de-aggregates" the terms.  (Docket Entry # 9, Ex. 1, ¶ 17 & Ex. 1(O); BOP program statement 5880.30 (1993), ch. VII, p. 30).  The remaining sentence, in this instance the non-parolable 45 year term on Count Two, is then "computed as if the other sentence had not existed."  (Docket Entry # 9, Ex. 1(O); BOP program statement 5880.30 (1993), ch. VII, p. 30).

Applying the foregoing provision of BOP program statement 5880.30 (1993), the BOP calculated the 45 year term on Count One as beginning on January 2, 1992, with 1,560 days of credit for the time spent in custody from September 25, 1987 to January 1, 1992.  (Docket Entry # 9, Ex. 1, ¶ 18 & Ex. 1(P)).  As previously indicated, the BOP paroled petitioner on this sentence effective January 11, 2002.

The BOP calculated the 45 year term on Count Two as beginning on January 2, 1992, with 1,560 days of credit for the

time spent in custody from September 25, 1987 to January 1, 1992, with an expired full term date of September 24, 2032.  (Docket Entry # 9, Ex. 1, ¶ 18 & Ex. 1(P)).  After the deduction of 5,400 days of statutory good time, 1,272 days of earned extra good time and 265 days of anticipated extra good time, the BOP projected petitioner's mandatory release date on Count Two as September 27, 2013.  (Docket Entry # 9, Ex. 1, ¶¶ 21-23 & Ex. 1(S) & 1(U)).

## DISCUSSION

Section 2241 provides the appropriate vehicle to challenge the execution of a sentence.  See Monahan v. Winn, 276 F.Supp.2d 196, 204 (D.Mass. 2003); Jimenez v. United States, 2000 WL 28164 at * 2 (S.D.N.Y. Jan. 14, 2000).  The mandatory, statutory exhaustion required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), does not apply to section 2241 proceedings.  Monahan v. Winn, 276 F.Supp.2d at 2-4; see also Blair-Bey v. Quick, 151 F.3d 1036, 1040-1041 (D.C.Cir. 1998) (PLRA filing fee provision did not apply to habeas petitioner attacking denial of parole).

Petitioner's first argument does not entitle him to habeas relief because the BOP correctly calculated the amount of statutory and earned good time credited toward the term of the 45

8

year sentence on Count Two.  Under 18 U.S.C. § 4161 (repealed)

("section 4161"), "Each prisoner convicted of an offense against

the United States and confined . . . for a definite term other

than life . . . shall be entitled to a deduction from the term of

his sentence beginning on the day on which the sentence commences

to run . . . [t]en days for each month, if the sentence is ten

years or more."  18 U.S.C. § 4161 (repealed).  With 540 months in

a 45 year sentence, the BOP accurately calculated the sentence on

Count Two as subject to a statutory award of good time of 5,400

days.

Under 18 U.S.C. § 4162 (repealed) ("section 4162"), an

inmate may, in the discretion of the BOP, receive an additional

three days per month earned good time during the first year of a

sentence and five days per month in each succeeding year.

Section 4162 provides as follows:

> A prisoner may, in the discretion of the Attorney General,
> be allowed a deduction from his sentence of not to exceed
> three days for each month of actual employment in an
> industry or camp for the first year or any part thereof, and
> not to exceed five days for each month of any succeeding
> year or part thereof.

> In the discretion of the Attorney General such allowance may
> also be made to a prisoner performing exceptionally
> meritorious service or performing duties of outstanding
> importance in connection with institutional operations.

> Such allowance shall be in addition to commutation of time

> for good conduct, and under the same terms and conditions
> and without regard to length of sentence.

18 U.S.C. § 4162 (repealed).  Thus, unlike the language of

section 4161, section 4162 "creates no entitlement."  <u>Waletzki v.

Keohane</u>, 13 F.3d 1079, 1081 (7th Cir. 1994).  Instead, the

statute "places the decision whether to award good-time credits

for job performance 'in the discretion of the Attorney General,'

and it provides no criteria for the exercise of that discretion."

<u>Id.</u>; <u>see</u> <u>U.S. v. Camarata</u>, 828 F.2d 974, 982 (3rd Cir. 1987)

("'extra good time,' 18 U.S.C. § 4162, is not a matter of right,

but only of the Bureaus's discretion") (Becker, J., concurring).

The BOP afforded petitioner the maximum amount of earned

good time credit toward the completion of the 45 year sentence on

Count Two.  As of April 30, 2009, the BOP credited 1,272 days of

earned extra good time credit for the 21 years, seven months and

six days of the 45 year sentence already served on Count Two.  If

petitioner continued to earn the five days of credit per month,

the BOP projected an additional 265 days of extra good time

credit for the remainder of the sentence.  Thus, the statutory

good time of 5,400, coupled with the earned extra good time of

1,272 and the projected extra earned good time of 265 results in

the BOP's accurately projected mandatory release date of

September 27, 2013.

Turning to petitioner's second argument, he maintains that 18 U.S.C. 4206 (repealed) ("section 4206") as well as 18 U.S.C. § 4164 (repealed) ("section 4164") and 18 U.S.C. § 4205(g) (repealed) ("section 4205(g)") mandate his release after the completion of two thirds or 30 years of the 45 year sentence on Count Two.  (Docket Entry ## 1 & 13).[3]  Section 4206(d) states that:

> Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: *Provided, however*, That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.

18 U.S.C. 4206 (repealed) (emphasis in original).  Section 4205(h), however, dictates that, "Nothing in this chapter shall be construed to provide that any prisoner shall be eligible for release on parole if such prisoner is ineligible for such release

---

[3]  The petition complains that petitioner is 40 days short of the 30 year mandatory release (Docket Entity # 1) and the opposition to the summary judgment motion cites to the above statutes (Docket Entry # 13, p. 2).

under any other provision of law."  18 U.S.C. § 4205(h)

(repealed).[4]

Count Two involved the violation of section 841 and a

distribution of more than five kilograms of cocaine.  Section

841(b) established punishments for violations of section 841(a).

21 U.S.C. §§ 841(a)&(b); see United States v. Robles-Pantoja, 887

F.2d 1250, 1257 (5th Cir. 1989).  Section 1002 of the ADAA

"replaced large portions of" the penalties in section 841(b)(1).

Padilla Palacios v. U.S., 932 F.2d at 33.  Notably, the ADAA

amended section 401(b)(1) of the Controlled Substances Act, 21

U.S.C. § 841(b)(1), to include the provision that, "No person

---

[4]  The Comprehensive Crime Control Act of 1984, Pub.L. No.
98-473, §§ 218(a)(5), 98 Stat. 1837, 2027 and 2031, repealed both
sections 4205 and 4206.  See U.S. v. Analla, 975 F.2d 119, 126
(4th Cir. 1992) (referring to sections 4205 and 4206 and stating
that, "Sentencing Reform Act of 1984 repealed both of these
sections").  Congress delayed the effective date of the repeal
until November 1, 1987.  See Pub. L. No. 99-217, § 4, 99 Stat.
1728; U.S. v. Robles-Pantoja, 887 F.2d 1250, 1257 (5th Cir. 1989)
("Comprehensive Crime Control Act of 1984, Pub.L. No. 98-473, §
218(a)(5), 98 Stat. 1837, 2027" repealed section 4205 with
November 1, 1986 as original effective date of repeal which
"Congress delayed . . . until November 1, 1987"); Powell v. U.S.
Parole Comm'n, 2007 WL 2283990 at *2 n.3 (W.D.N.Y. Aug. 6, 2007)
("statutes that created the federal parole system, 18 U.S.C. §§
4201-4218, were repealed in 1984" but "they remain applicable to
Powell because his federal sentence was for a crime committed
prior to November 1, 1987, the date the United States Sentencing
Guidelines became effective"); see also United States v. Delario,
120 F.3d 580, 581 (5th Cir. 1997).

12

sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein." 18 U.S.C. § 841(b)(1); see U.S. v. Robles-Pantoja, 887 F.2d at 1257 ("section 841(b) was largely rewritten by the [ADAA], Pub.L. No. 99-570, § 1002," with one change being the addition to section 841(b)(1) "that '[n]o person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein'"). Section 841 therefore constitutes another "provision of law" barring eligibility for parole within the meaning of section 4205(h).

Furthermore, unlike the repeal of sections 4205 and 4206, which was delayed until November 1, 1987, "the amendments to section 841 eliminating parole eligibility became effective immediately when President Reagan signed the ADAA into law on October 27, 1986." United States v. Delario, 120 F.3d at 581; see U.S. v. Robles-Pantoja, 887 F.2d at 1257. As explained by the court in Robles-Pantoja in construing the interplay of section 4205(a) and section 841 in the context of a drug offense committed in February 1987 after the ADAA's October 1986 enactment, "the amended section 841(b) created an explicit exception to the general 4205(a) rule allowing parole." U.S. v. Robles-Pantoja, 887 F.2d at 1257.

13

Here too, section 841(b) made petitioner ineligible for parole.  Section 4206(d), which required release on parole after serving two thirds of a sentence, did not apply because section 4205(h) of the same chapter made any prisoner eligible for parole under section 4206(d) ineligible if another law rendered the prisoner ineligible.  18 U.S.C. §§ 4205(h) (repealed) & 4206(d) (repealed); 21 U.S.C. § 841(a) & 841(b); see U.S. v. Robles-Pantoja, 887 F.2d at 1257.  In light of petitioner's ineligibility for parole by virtue of the no parole provision of section 841, 18 U.S.C. § 4163 (repealed) applied and provided that, "Except as hereinafter provided a prisoner shall be released at the expiration of his term of sentence less the time deducted for good conduct."  As noted above, the BOP correctly deducted the applicable statutory as well as earned and projected extra good time to calculate petitioner's release date as September 27, 2013.  Petitioner's argument relying on a mandatory release date of 30 years and section 4206(d) does not support habeas relief.[5]

---

[5]  The additional statutes cited by petitioner do not change the calculation or the result.  Section 4164 simply "provides that when a prisoner who has served his term less good-time deductions is released, he will be treated as if he were on parole until the maximum term expires less one hundred and eighty days."  McQuerry v. U.S. Parole Com'n, 961 F.2d 842, 845 (9th

Addressing petitioner's final argument, he submits that the BOP failed to conduct a hearing as required under 28 C.F.R. § 2.53 ("section 2.53").  Section 2.53(a) reads as follows:

> (a) A prisoner . . . serving a term or terms of 5 years or longer shall be released on parole after completion of two-thirds of each consecutive term or terms or after completion of 30 years of each term or terms of more than 45 years (including life terms), whichever comes earlier, unless pursuant to a hearing under this section, the Commission determines that there is a reasonable probability that the prisoner will commit any Federal, State, or local crime or that the prisoner has frequently or seriously violated the rules of the institution in which he is confined.  If parole is denied pursuant to this section, such prisoner shall serve until the expiration of his sentence less good time.

28 C.F.R. § 2.53.

As the strikingly similar language of section 4206(d) indicates, the referenced hearing preceding a mandatory release after the completion of two thirds of a federal sentence includes a hearing when the parole board does not release a prisoner to parole under section 4206(d) (repealed).  The statutory authority

---

Cir. 1992).  Petitioner is not released.  Section 4205(g) allows the BOP to file a motion and allows the court upon such motion to reduce "any minimum term to the time the defendant has served." 18 U.S.C. § 4205(g).  The BOP has not filed such a motion.  The case relied on by petitioner, U.S. v. Castonguay, 843 F.2d 51, 56 (1st Cir. 1988), is distinguishable because it did not interpret the effect of section 4205(h) but, instead, considered the interplay between sections 4205(a) and (b).

of the parole board and its chairman to promulgate the regulation (section 2.53) arises under 18 U.S.C. §§ 4203(a)(1) (repealed) and 4204(a)(6) (repealed).  These statutory provisions are subject to the statutory mandate that if another law, such as section 841, makes a prisoner ineligible for parole, then the parole authorized under section 4206(d) does not apply.  18 U.S.C. § 4205(h) (repealed).  The hearing referenced in section 2.53 therefore does not apply to the violation of section 841 in Count Two.  In other words, because petitioner is not eligible for parole under sections 841 and 4205(h), the regulatory provision of section 2.53, which requires parole unless the parole board concludes otherwise in a hearing, does not apply.

In the alternative, the BOP released petitioner on parole on January 11, 2002, for the sentence on Count One.  Petitioner is therefore already on parole on the parolable offense on Count One and has served the four year consecutive term on Count Three. The mandatory release on parole under section 4206(d) and the requirement of a hearing to deny such a release under section 2.53 only apply to a prisoner "who is not earlier released under this section or any other applicable provision of law."  18 U.S.C. § 4206(d) (repealed).  As correctly argued by respondent (Docket Entry # 15), because petitioner is already released on

16

parole within the meaning of section 4206(d), he is not entitled to a hearing under section 2.53.

As a final matter, any mistake by the BOP in originally calculating the sentence on Count Two does not justify habeas relief.  "[T]he general rule" is that "an offender's expectation and reliance interests in sentence mistake cases are ordinarily trumped by the strong public interest in crime prevention and punishing criminals."  <u>Wells v. United States</u>, 802 A.2d 352, 354 (D.C. 2002) (internal quotation marks omitted).  Moreover, the circumstances do not present an "extreme case" precluding a belated correction of a sentence later found to be in error.  <u>DeWitt v. Ventetoulo</u>, 6 F.3d 32, 34 (1st Cir. 1993).

## CONCLUSION

In accordance with the foregoing discussion, the motion for summary judgment (Docket Entry # 8) is **ALLOWED** and the petition is **DISMISSED**.

     /s/ Marianne B. Bowler     
**MARIANNE B. BOWLER**
United States Magistrate Judge

17